UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

JOSHUA PAUL,

Docket No.: **5:22-cv-1111 (TJM/ML)**

                       Plaintiff,

**COMPLAINT**

                 -against-

**DEMAND FOR JURY TRIAL**

COUNTY OF MADISON, MADISON COUNTY
SHERIFF'S OFFICE,

                    Defendants.
-----------------------------------------------------------------X

      Plaintiff Joshua Paul ("Plaintiff"), by and through his attorneys, Tully Rinckey, PLLC, as

and for his Complaint against Defendants County of Madison and Madison County Sheriff's

Office ("Defendants"), allege as follows:

### PRELIMINARY STATEMENT

      1.     Plaintiff brings this action against Defendants for, inter alia: (a) disability

discrimination and retaliation in violation of the Americans with Disabilities Act ("ADA"), as

amended, 42 U.S.C. §§ 12101 *et seq.*; and (b) disability discrimination and retaliation in violation

of the New York State Human Rights Law ("NYSHRL"), as amended, New York State Executive

Law §§ 290 *et seq.*

      2.     Plaintiff was an employee of Defendants for nearly fourteen years. In 2019,

following Plaintiff suffering a seizure on the job, Defendants refused to allow Plaintiff to return to

work or work a light duty assignment as a reasonable accommodation for eight months. Thereafter,

Defendants proceeded to subject Plaintiff to continuous harassment and discrimination for his

disability and for seeking an accommodation.

      3.     Plaintiff filed a complaint of discrimination with the New York State Division of

Human Rights ("NYSDHR") in March 2020 about the matter, but was later compelled to withdraw his complaint to avoid ongoing retaliation.

4.      However, the retaliation continued. On September 28, 2021, due to an incident with his mental health, Plaintiff threatened self-harm and/or suicide. Despite being cleared by medical providers and being diagnosed with a mental disability, Defendants unlawfully terminated Plaintiff on January 31, 2022, without due process as a result of the actions his mental disability caused. Plaintiff was outright told that his termination was a result of his mental disability and actions reflecting poorly on Defendants.

5.      In a nutshell, Defendants previously discriminated against Plaintiff for having epilepsy and filing a complaint about Defendants' treatment of him. After two years of ongoing retaliation and discrimination for Plaintiff's prior complaint, Defendants used Plaintiff's mental disability and resulting actions as grounds for unlawfully terminating him.

6.      Plaintiff now seeks equitable relief and monetary damages as redress for Defendants' blatant and repeated violations of Plaintiff's rights under the above-referenced state, federal and municipal laws protecting the rights of employees in the workplace.

## JURISDICTION AND VENUE

7.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under the Americans with Disabilities Act ("ADA"), as amended, 42 U.S.C. §§ 12101 *et seq.*

8.      The Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts, such that they form part of the same case or controversy under Article III of the United States Constitution.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as all actions comprising the claims for relief occurred within this judicial district, and pursuant to 28 U.S.C. § 1391(b) (1), as the Defendants reside within this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     On or about July 20, 2022, Plaintiff filed a "Charge of Discrimination" against Defendants with the Equal Opportunity Employment Commission ("EEOC"), EEOC Charge No, 525-2022-01722, alleging violations of the ADA, as amended, among other violations.

11.     On or about July 28, 2022, the EEOC issued Plaintiff a Notice of Dismissal and Right to Sue, based on the allegations against Defendants. *See* Exhibit ("Exh.") 1. This Complaint is being filed within 90 days of said date.

12.     All other administrative prerequisites have been met.

## DEMAND FOR JURY TRIAL

13.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

14.     At all relevant times hereto, Plaintiff was and is a resident of the City of Oneida, County of Madison, and the State of New York

15.     At all relevant times, from June 2, 2008 through January 31, 2022, Plaintiff was a full-time employee of Defendants and for nearly fourteen years performed work and services for Defendants.

16.     Plaintiff is an individual with a disability. At all relevant times, Plaintiff suffered, and still suffers from, physical impairments. These impairments include epilepsy, which Plaintiff was first diagnosed with in November 2019.

3

17.     Plaintiff is also an individual with a mental disability. On September 28, 2021, Plaintiff was diagnosed with adjustment disorder with depressed mood.

18.     At all relevant times, Plaintiff was and is an "employee" and a person entitled to protection as defined by the NYSHRL and ADA.

***Defendant Madison County Sheriff's Office***

19.     Upon information and belief, Defendant Madison County Sheriff's Office ("MCSO") is a municipal department of Madison County, a municipal corporation.

20.     MCSO's principal place of business is located at 138 N. Court Street, Wampsville, NY, 13163, in the city of Wampsville, County of Madison, and the State of New York

21.     Upon information and belief, at all relevant times, Defendant MCSO employed more than 100 employees.

22.     Upon information and belief, at all relevant times, Defendant MCSO controlled the terms and conditions of Plaintiff's employment and was and is an "employer" within the meaning of the NYSHRL and ADA.

***Defendant County of Madison***

23.      Upon information and belief, the County of Madison is a county located in the State of New York that maintains control over the operations of the MCSO, including its practices related to hiring and firing, and is an "employer" within the meaning of the NYSHRL and ADA.

24.     The County of Madison is located at 138 N. Court Street, Wampsville, NY, 13163.

## FACTUAL ALLEGATIONS

25.     Plaintiff began working for Defendants on or about June 2, 2008 until he was abruptly and unlawfully terminated on January 31, 2022.

26.     At the time of his unlawful termination, Plaintiff served in the position of Deputy

Sheriff for the Defendants.

**Defendants Discriminated Against Plaintiff Due to His Disability and Refused to Allow Him To Return to Work Although His Doctor Gave Him Clearance for Same.**

27.     On or about September 30, 2019, Plaintiff had a seizure while at work, and he was brought to an emergency room for evaluation and observation.

28.     On or about October 1, 2019, Plaintiff was discharged from the emergency room with a medical note clearing him to return to work with no restrictions, which he turned in to Defendants.

29.     On or about October 2, 2019, Plaintiff received a phone call from Undersheriff Robert Lenhart, who informed him that Defendants were placing him on Administrative Leave until October 7, 2019, when Plaintiff and Undersheriff Lenhart could meet.

30.     On or about October 7, 2019, Plaintiff met with Sheriff Todd Hood and Undersheriff Lenhart. They informed him that he was being assigned to light duty, with his schedule changed from ten hours per day from Friday through Monday to eight hours per day from Monday through Friday. When Plaintiff asked about his doctor's note, he was told that they did not accept it and they would contact his doctor to discuss Plaintiff's job duties.

31.     The following day, on or about October 8, 2019, after Undersheriff Lenhart spoke with Plaintiff's doctor, Plaintiff was cleared to return to work, but could not drive a county vehicle or carry a firearm. He was not restricted from driving his personal vehicle to and from work. However, Defendants deliberately misinterpreted this direction, and stated that Plaintiff could not drive *any* vehicle, even his own.

32.     Indeed, on or about October 9, 2019, Sheriff Hood informed Plaintiff that he would need to turn in his gun, be placed on two weeks of paid leave, and remain out on leave using accrued time off afterward. Sheriff Hood rescinded the offer of a light duty assignment, would not

allow Plaintiff a reasonable accommodation of driving his own personal vehicle to work, and told Plaintiff that he was sick of dealing with Plaintiff, that the other employees were terrified to work with Plaintiff, and that they were the ones having to deal with Plaintiff.

33.     Subsequently, on or about October 28, 2019, Plaintiff, through a Union attorney, informed Sheriff Hood that he had been placed on involuntary leave and he requested a hearing on the matter. He remained on involuntary leave until June 2, 2020.

34.     Since on or about October 28, 2019, Sheriff Hood has refused to have any type of professional or cordial relationship with Plaintiff, has refused to acknowledge Plaintiff's presence, will not speak to Plaintiff, and often gives Plaintiff dirty looks.

**Defendants Invented Justifications and Excuses to Restrict Plaintiff From Returning to Work, Including Refusing His Request for a Temporary and Reasonable Accommodation.**

35.     On or about November 7, 2019, in connection with his ongoing medical treatment, Plaintiff saw a medical specialist and was diagnosed with focal epilepsy and prescribed medication. The specialist opined that Plaintiff could not drive or carry a firearm until March 30, 2020, but he could return to work on a light duty assignment.

36.     On or about November 8, 2019, Plaintiff received a letter from Sheriff Hood, informing him that Plaintiff had not been placed on involuntary leave, but had instead absented himself from the workplace. This was patently false, as Plaintiff had most certainly not absented himself from the workplace. Thus, he remained out of work, based on Defendants' false pretenses.

37.     On or about December 5, 2019, Plaintiff, through his Union attorney, requested that Sheriff Hood reinstate Plaintiff to his former position and reconsider Plaintiff's request for a light duty assignment in light of the diagnosis and recommendation by the specialist. Sheriff Hood issued no response.

38.     On or about December 12, 2019, Plaintiff was advised by his Union President that

Undersheriff Lenhart told him that they were trying to get Plaintiff back to work, but he would need to cut ties with his Union attorney.

39.    On or about January 10, 2020, Plaintiff, through his Union attorney, informed Sheriff Hood that the Defendants' disparate treatment of Plaintiff could constitute violations of the ADA and NYSHRL.  In response, on or about February 3, 2020, Plaintiff received a letter from the Madison County Attorney, advising him that they were willing to engage in the interactive process to help return him to work.

40.    On or about February 19, 2020, Plaintiff had a follow-up appointment with his doctor, who cleared him to return to work without any restriction on March 15, 2020. Plaintiff submitted this information to Defendants. However, Defendants completely disregarded it.  In fact, on or about March 4, 2020, Plaintiff was informed that he had *not* been cleared by Defendants to return back to work.

41.    On or about March 5, 2020, Plaintiff was informed that he was not being allowed to return to work until the Defendants could review his medical documentation, and Plaintiff needed to sign and return a medical release form that he had already submitted to them. When he asked why he was not allowed back to work despite his doctor's clearance, he was told that he was "pushing the insubordinate button right now." Defendants were making it exceedingly difficulty for Plaintiff to return to work, despite his clearance, due to their discriminatory animus.

**Plaintiff Filed a Complaint with the New York State Division of Human Rights ("NYSDHR") and Defendants' Retaliation Escalated**

42.    On or about March 16, 2020, Plaintiff filed a complaint with the NYSDHR concerning allegations of disability discrimination.

43.    On or about March 17, 2020, Plaintiff attempted to file a grievance. He was informed by Sheriff Hood that he would not accept the forms because Plaintiff had "drawn the line

in the sand" by having an attorney, and that Plaintiff should take the grievance to the County Attorney. Later that day, without Plaintiff's approval, the grievance was put in abeyance at stage 2 of the procedure.

44.     On or about March 23, 2020, Plaintiff was reinstated to the payroll as "non-essential," but he was still not permitted to return to work.

45.     On or about March 30, 2020, Plaintiff submitted an amended complaint to NYSDHR. Same is incorporated herein by reference. *See* Exh. 2. Thereafter the retaliation and discrimination increased.

46.     On or about April 2, 2020, Plaintiff signed the aforementioned requested medical release forms, with the strict provision that the information could not be disclosed to others, apart from Defendants, without Plaintiff's prior written approval.

47.     On or about April 15, 2020, Plaintiff was ordered not to attend a training that he had received an email about attending.

48.     On or about May 7, 2020, Plaintiff's grievance abeyance was rescinded and the grievance advanced to Step 3.

49.     On or about May 20, 2020, Defendants issued all the investigators new vehicles, except for Plaintiff. New cars were issued based on seniority. Plaintiff was the most senior investigator.

50.     On or about May 29, 2020, Plaintiff was informed that his stage 3 grievance had been denied, and that it was proceeding to stage 4.

51.     On or about June 1, 2020, Plaintiff was notified by Defendants that he was cleared to return to work on June 2, 2020.

52.     On or about June 2, 2020, Plaintiff was informed that his return to work constituted

a settlement of his grievance.

**Plaintiff Returned to Work But was Subjected to Harassment and a Hostile Work Environment**

53.     Plaintiff returned to work on June 2, 2020 and resumed his prior role as Deputy Sheriff. However, Plaintiff faced harassment and hostility at every turn.

54.     On or about June 9, 2020, Plaintiff submitted a memorandum to Sheriff Hood, requesting a schedule change pursuant to the suggestion of the County doctor.

55.     On or about July 3, 2020, Plaintiff arrived to work to discover that a giant version of a photo of Sheriff Hood had been placed on the wall in the hallway directly across from his desk, in an attempt to intimidate and harass him further. He had previously told a coworker that he found the photos of Sheriff Hood in the office to be intimidating.

56.     On or about July 4, 2020, Plaintiff was told that he could not park in the parking spot closest to the door because it was not his assigned parking spot, even though it was a holiday and no one else was working that day.

57.     On or about July 2020, Plaintiff was assigned approximately thirteen cases, a disproportionate number of cases more than his coworkers.

58.     On or about July 16, 2020, Plaintiff withdrew his complaint with the NYSDHR out of fear of further retaliation. He believed that he was compelled to do this in order to maintain his job.

59.     However, the discrimination and retaliation continued even after he withdrew his complaint. On or about November 6, 2020, a Sergeant who was not working had a question about the completion of paperwork, so Plaintiff went to a Lieutenant for instructions on what to do. On or about November 19, 2020, Plaintiff was scolded for not following the chain-of-command, which was used against him on his performance evaluation. The Lieutenant falsely claimed that she did

not provide Plaintiff with any instructions.

60.     On or about November 24, 2020, Plaintiff's request to teach snowmobile safety courses, so that he could maintain his instructor certification, was denied by Sheriff Hood. Upon information and belief, other similarly situated coworkers were permitted to maintain their instructor certifications.

61.     On or about December 1, 2020, Plaintiff was issued a poor evaluation review, with several ratings of "Does not meet expectations."

62.     On or about January 11, 2021, Plaintiff was told he would be issued a "write up" for a violation of the social media policy for a comment he made on his own personal Facebook. Upon information and belief, other similarly coworkers had never been written up or disciplined for their social media comments and posts.

63.     On or about January 20, 2021, Plaintiff received a directive from Sergeant Matt White that Plaintiff, and only Plaintiff, was required to have all his reports reviewed by Sgt. White and to send Sgt. White an email with the date and time he leaves any case in Sgt. White's mailbox for review.

64.     On or about February 3, 2021, three of Plaintiff's coworkers met to discuss a team that he was a member of, but he was not notified of or invited to the meeting. They later informed Plaintiff that the meeting was about coming up with questions for interviews for new candidates to be held on February 12, 2021, but Plaintiff was not invited to be part of the interviews. Plaintiff had more seniority than the coworkers in question.

65.     On or about February 5, 2021, Plaintiff was issued the formal written counseling from Sergeant White concerning the aforementioned alleged violation of the social media policy.

66.     It was evident that Defendants wished to terminate Plaintiff and were inventing

performance issues and disciplinary issues to create a false appearance of "legitimacy."

67.     On or about February 12, 2021, Plaintiff was informed that all employees were being reassigned to Monday through Friday 8:00am to 4:00pm schedules. He advised Sergeant White that it would not work with his schedule, but he was later told that management did not want Plaintiff working weekends anymore, for various vague and capricious reasons.

**Plaintiff is Unlawfully Terminated Due to His Disability and for Engaging in Protected Activity**

68.     On or about September 28, 2021, Plaintiff drove his work vehicle to the home of his estranged wife. During this incident, Plaintiff had an exchange with his estranged wife.

69.     Plaintiff's estranged wife contacted the police. Plaintiff was then transported to a Comprehensive Psychiatric Emergency Program at St. Joseph's Hospital in Syracuse, NY, for evaluation. Plaintiff voluntarily went to the hospital to be evaluated.

70.     At the hospital, Plaintiff was diagnosed with adjustment disorder with depressed mood. Following evaluation, Plaintiff was released later that same day. He was not considered a threat to himself or anyone else.

71.     Following this incident, Plaintiff has sought and received psychiatric treatment.

72.     On or about September 29, 2021, Plaintiff was issued a letter by Undersheriff Wilcox, notifying him that he would be placed on paid administrative leave pending an investigation into what had occurred.

73.     On or about January 31, 2022, at approximately 12:49pm, Plaintiff received a call from Sheriff Hood, directing that Plaintiff appear at 3:00pm for a meeting for "Disciplinary Action," and Sheriff Hood would not wait for Plaintiff's Union attorney to be present. At the meeting, attended by Plaintiff, Sheriff Hood, Ryan Aylward, and Matt Schwock, Plaintiff was issued a notice of termination. He was not permitted a hearing or any due process.

74.     In the Notice of Discipline dated January 31, 2022, Plaintiff was administratively charged with Misconduct/Incompetence with five specifications. The reasons stated were false and retaliatory.

75.     Furthermore, the Notice of Discipline stated that an employee has twenty working days to submit a grievance of a disciplinary action before the penalty is deemed accepted. It also stated that an employee has a right to be represented by a Union attorney and that an employee had the right to request arbitration at Stage 4 of the grievance process. However, in direct contravention of these provisions, Plaintiff was terminated effective immediately.

76.     Indeed, within the twenty working day period, on or about February 7, 2022, Plaintiff filed a grievance with Madison County, seeking to move for arbitration in his matter as permitted by the Collective Bargaining Agreement. This grievance is still pending. Although Plaintiff filed a grievance, the termination was made final long before the grievance was resolved.

77.     In sum, Plaintiff was terminated for having a mental disability, in express violation of state and federal law.  Moreover, he was terminated before his grievance was resolved, although this was a denial of his due process rights.

78.     Defendants informed Criminal Justice Services about Plaintiff's termination "for cause," and on or about April 7, 2022, Plaintiff was notified by the New York State Department of Criminal of same. As a result, Plaintiff's police officer certification was permanently invalidated effective immediately and he was declared ineligible for any future certification.

79.     This determination was premature since Plaintiff's grievance was still pending, and as per the Notice of Discipline, the grievance had to addressed before the termination was deemed final.

80.     On or about July 20, 2022, Plaintiff filed a "Charge of Discrimination" against Defendants with the EEOC under EEOC Charge No, 525-2022-01722, alleging violations of the ADA, as amended, among other violations.

81.     On or about July 28, 2022, the EEOC issued Plaintiff a Notice of Dismissal and Right to Sue.

## AS AND FOR A FIRST CAUSE OF ACTION
*Discrimination under ADA, 42 U.S.C. §§ 12101 et seq.*

82.     Plaintiff realleges and incorporates the allegations of Paragraphs 1 through 82 of this Complaint as if set forth fully herein.

83.     Pursuant to the ADA, as amended, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability" with regard to, *inter alia*, the discharge of employees and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

84.     Plaintiff suffers from a "disability" as defined under the ADA, as he has a physical impairment and a mental disability that substantially limit one or more of his major life activities. Specifically, Plaintiff's physical impairments are a result of being diagnosed with and suffering from epilepsy, and his mental disability is being diagnosed with and suffering from adjustment disorder with depressed mood.

85.     Moreover, Defendants perceived Plaintiff as having a disability.

86.     Plaintiff is a "qualified individual" under the ADA, as he can perform the essential functions of the Deputy Sheriff position, with or without reasonable accommodation, as indicated upon Plaintiff's fourteen years of exceptional service.

87.     Defendants violated the ADA when they discriminated against Plaintiff on the basis of his disabilities by subjecting him to ongoing discrimination and harassment.

13

88.     Additionally, Defendants violated the ADA when they discriminated against Plaintiff on the basis of his disabilities by terminating Plaintiff from his position of Deputy Sheriff on or around January 31, 2022 on the basis that his need for evaluation for a mental disability reflected poorly on Defendants and tarnished his ability to testify and be seen and heard as credible.

89.     As a direct and proximate cause of Defendants' willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses.

90.     Upon information and belief, Defendants' conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of Plaintiff. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants.

91.     As a result of Defendants' discrimination in violation of the ADA, Plaintiff has been damaged in an amount to be determined by a jury at the time of trial.

## AS AND FOR A SECOND CAUSE OF ACTION
*ADA Retaliation under 42 U.S.C. § 12203*

92.     Plaintiff realleges and incorporates the allegations of Paragraphs 1 through 91 of this complaint as if set forth fully herein.

93.     According to the ADA, it is unlawful to retaliate against an individual for opposing any act or practice made unlawful by the statute. *See* 42 U.S.C. § 12203(a).

94.     Plaintiff opposed unlawful practices under the ADA when on or about October 28, 2019, and on or about January 10, 2020, Plaintiff, by and through counsel, raised claims of disability discrimination to Defendants and on or about March 16, 2020, filed a complaint of discrimination with the NYSDHR.

95.    Defendants unlawfully retaliated against Plaintiff by refusing to allow Plaintiff to return to work for eight months, harassing and intimidating him upon his return to work in June 2020, assigning him a disproportionately high number of cases, denying his request to maintain his instructor certification, issuing him a written counseling memo for alleged violation of the social media policy, and terminating him without due process when his mental disability is diagnosed.

96.    Defendants' treatment of Plaintiff and termination of Plaintiff's employment was motivated by Plaintiff's prior opposition to disability discrimination.

97.    Defendants' actions taken against Plaintiff were materially adverse and would dissuade a reasonable person from making or supporting a charge of disability discrimination.

98.    Defendants' actions are causally connected to Plaintiff raising claims of disability discrimination, as Defendants actions all occurred soon after Plaintiff engaged in protected ADA activity.

99.    As a direct and proximate cause of Defendants' willful, knowing and intentional retaliation, Plaintiff has suffered and will continue to suffer pain and suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses.

100.    Upon information and belief, Defendants' conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of Plaintiff. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants.

101.    As a result of Defendants' retaliation in violation of the ADA, Plaintiff has been damaged in an amount to be determined by a jury at the time of trial.

**AS AND FOR A THIRD CAUSE OF ACTION**
*Disability Discrimination under N.Y. Exec. Law § 296(1)(a)*

102.  Plaintiff realleges and incorporates the allegations of Paragraphs 1 through 101 of this Complaint as if set forth fully herein.

103.  Pursuant to the NYSHRL, it is an unlawful discriminatory practice for an employer to discharge from employment or to discriminate against an individual in compensation or in terms, conditions or privileges of employment due to that individual's disability. *See* N.Y. Exec. Law § 296(1)(a).

104.  Plaintiff suffers from a "disability" as defined by the NYSHRL, as he has a physical impairment and a mental disability that substantially limit one or more of his major life activities. Specifically, Plaintiff's physical impairments are a result of being diagnosed with and suffering from epilepsy, and his mental disability is being diagnosed with and suffering from adjustment disorder with depressed mood.

105.  Additionally, Defendants perceived Plaintiff as being disabled.

106.  Plaintiff is protected by the NYSHRL, which prohibits disability discrimination.

107.  Notwithstanding Plaintiff's physical disabilities, with or without reasonable accommodation, Plaintiff was able and willing to perform the essential functions of his position of Deputy Sheriff.

108.  Defendants violated the NYSHRL when they discriminated against Plaintiff on the basis of his disabilities, beginning on or about October 2019, by refusing to reinstate him when he was cleared for work, and then refusing to grant him a reasonable accommodation, when he required same.

109.  Defendants violated the NYSHRL when they discriminated against Plaintiff on the basis of his disabilities by terminating Plaintiff from his position of Deputy Sheriff on or around

16

January 31, 2022 on the basis that his need for evaluation for a mental disability reflected poorly on Defendants and tarnished his ability to testify and be seen and heard as credible.

110.    As a direct and proximate cause of Defendants' willful, knowing and intentional discrimination, Plaintiff has suffered and will continue to suffer pain and suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses.

111.    As a result of Defendants' discrimination in violation of the NYSHRL, Plaintiff has been damaged in an amount to be determined by a jury at the time of trial.

### AS AND FOR A FOURTH CAUSE OF ACTION
*Retaliation under N.Y. Exec. Law § 296(7)*

112.    Plaintiff realleges and incorporates the allegations of Paragraphs 1 through 111 of this complaint as if set forth fully herein.

113.    Under the NYSHRL, it is an unlawful discriminatory practice to retaliate or discriminate against any person because he or she has opposed any practices forbidden under the statute or because he or she has filed a complaint. *See* N.Y. Exec. Law. § 296(7).

114.    Plaintiff opposed unlawful practices under the NYSHRL when on or about October 28, 2019, and on or about January 10, 2020, Plaintiff, by and through counsel, raised claims of disability discrimination to Defendants and on or about March 16, 2020, filed a complaint of discrimination with the NYSDHR.

115.    Defendants unlawfully retaliated against Plaintiff by refusing to allow Plaintiff to return to work for eight months, harassing and intimidating him upon his return to work in June 2020, assigning him a disproportionately high number of cases, denying his request to maintain his instructor certification, issuing him a written counseling memo for alleged violation of the

social media policy, and terminating him without due process when his mental disability is diagnosed.

116.    Defendants' treatment of Plaintiff and termination of Plaintiff's employment was motivated by Plaintiff's prior opposition to disability discrimination.

117.    Defendants' actions taken against Plaintiff were materially adverse and would dissuade a reasonable person from making or supporting a charge of disability discrimination.

118.    Defendants' actions are causally connected to Plaintiff raising claims of disability discrimination, as Defendants' actions all occurred soon after Plaintiff engaged in protected NYSHRL activity.

119.    As a direct and proximate cause of Defendants' willful, knowing and intentional retaliation, Plaintiff has suffered and will continue to suffer pain and suffering, extreme mental anguish, emotional distress, loss of earnings, job opportunities, employment benefits, retirement benefits, and other incidental expenses.

120.    Upon information and belief, Defendants' conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of Plaintiff. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants.

121.    As a result of Defendants' retaliation in violation of the NYSHRL, Plaintiff has been damaged in an amount to be determined by a jury at the time of trial.

## PRAYER FOR RELIEF

**WHEREFORE,** based on the foregoing, Plaintiff requests judgment against Defendants as follows:

1.    An order restoring the Plaintiff to his position as Deputy Sheriff;

2.    An order restoring to Plaintiff all wages, entitled leave, and all other benefits lost

as a result of the unlawful discrimination and unlawful termination detailed herein, with interest;

3.      An award of compensatory and punitive damages;

4.      An award of liquidated damages;

5.      An award of reasonable attorneys' fees and disbursements; and,

6.      Such other and further relief as this Court deems just and proper.


Dated: October 24, 2022
      New York, New York

JOSHUA PAUL

By his Attorney:

_____

Chaya Gourarie, Esq.
TULLY RINCKEY, PLLC
777 Third Avenue 21st Floor
New York, NY 10017
Phone: (646) 813-2965
Fax:     (646) 705-0049
cgourarie@tullylegal.com