**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JOSHUA PAUL,**

              **Plaintiff,**

     **v.**                             **No. 5:22-cv-1111**
                                         **(TJM/ML)**

**COUNTY OF MADISON, and**
**MADISON COUNTY SHERIFF'S OFFICE**

              **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

### DECISION & ORDER

Before the Court is Defendants' motion to dismiss the Complaint.  See dkt. # 10.

The parties have briefed the issues, and the Court will decide the matter without oral

argument.

## I.    Background

This case concerns Plaintiff Joshua Paul's claims that Defendants, the County of

Madison and the Madison County Sheriff's Office, discriminated against him because of his

disabilities and retaliated against him for complaining about that discrimination in violation of

United States and New York law.

Plaintiff worked for the Defendants from June 2, 2008 until January 31, 2022.

Complaint ("Complt."), dkt. # 1, at ¶ 15.  Plaintiff alleges that he "is an individual with a

disability," and at the times relevant to the Complaint, "suffered, and still suffers from, physical impairments."  Id. at ¶ 16.  Plaintiff further alleges that "[t]hese impairments include epilepsy, which Plaintiff was first diagnosed with in November 2019."  Id.  Plaintiff also suffers from "a mental disability."  Id. at ¶ 17.  He received a diagnosis of "adjustment disorder with depressed mood" on September 28, 2021.  Id.  Plaintiff began to work for Defendants on June 2, 2008.  Id. at ¶ 25.  His employment ended with his termination on January 31, 2022.  Id.  At the time of his termination, Plaintiff was a Deputy Sheriff.  Id. at ¶ 26.

Plaintiff had a seizure at work on September 30, 2019.  Id. at ¶ 27.  He went to an emergency room to be evaluated and observed.  Id.  Plaintiff was discharged from the emergency room on October 1, 2019.  Id. at ¶ 28.  He had a medical note that cleared him to return to work without restrictions.  Id.  He gave that note to Defendants.  Id.

Plaintiff received a phone call from Undersheriff Robert Lenhart on October 2, 2019.  Id. at ¶ 29.  Lenhart informed Plaintiff that Defendants were placing him on administrative leave until October 7, 2019.  Id.  Plaintiff met with Undersheriff Lenhart and Sheriff Todd Hood on that day.  Id. at ¶ 30.  Hood and Lenhart informed Plaintiff he was assigned to light duty.  Id.  Plaintiff's schedule changed from ten hours per day Friday through Monday to eight hours per day Monday through Friday.  Id.  Plaintiff asked about his doctor's note; Hood and Lenhart told him "they did not accept it and would contact his doctor to discuss Plaintiff's job duties."  Id.

After Lenhart spoke with Plaintiff's doctor on October 8, 2019, Plaintiff was cleared to return to work, but not permitted to drive a county vehicle or carry a firearm.  Id. at ¶ 31. Plaintiff was permitted to drive his personal vehicle to and from work.  Id.  Defendants

2

"misinterpreted" this restriction.  Id.  They concluded that Plaintiff could not drive any vehicle, even his own vehicle.  Id.

On October 9, 2019, Hood informed Plaintiff that he needed to turn in his gun.  Id. at ¶ 32.  Hood further told Plaintiff he would be placed on two-weeks paid leave, and then would need to remain out on leave, using his accrued time off.  Id.  Plaintiff alleges that "Hood rescinded the offer of a light duty assignment, would not allow Plaintiff a reasonable accommodation of driving his own personal vehicle to work, and told Plaintiff that he was sick of dealing with Plaintiff[.]" Id.  Hood also stated, Plaintiff alleges, that "other employees were terrified to work with Plaintiff, and that they were the ones having to deal with Plaintiff." Id.

On October 28, 2019, Plaintiff's union attorney informed Hood that Plaintiff had been placed on involuntary leave.  Id. at ¶ 33.  Plaintiff requested a hearing on the matter.  Id.  Plaintiff remained on involuntary leave until June 2, 2020.  Id.

Plaintiff alleges that "Sheriff Hood has refused to have any type of professional or cordial relationship with Plaintiff" since October 28, 2019.  Id. at ¶ 34.  Plaintiff further alleges that Sheriff Hood has "refused to acknowledge Plaintiff's presence," refused to speak to Plaintiff, "and often gives Plaintiff dirty looks."  Id.

Plaintiff saw a medical specialist on November 7, 2019 in connection with his ongoing medical treatment.  Id. at ¶ 35.  That specialist diagnosed Plaintiff with focal epilepsy.  Id.  The specialist prescribed medication and "opined that Plaintiff could not drive or carry a firearm until March 30, 2020."  Id.  The specialist found, however, that Plaintiff could return to work on a light duty assignment.  Id.

Plaintiff received a letter from Sheriff Hood on November 8, 2019.  Id. at ¶ 36.  The

letter informed Plaintiff that he had not been placed on involuntary leave, "but had instead absented himself from the workplace." Id.  Plaintiff alleges that this claim was false, because Plaintiff had not "absented himself from the workplace." Id.  According to Plaintiff, he remained out of work "based on Defendants' false pretenses." Id.

Through his union attorney, on December 5, 2019, Plaintiff requested that Sheriff Hood reinstate him to his former position. Id. at ¶ 37.  Plaintiff also asked Sheriff Hood to reconsider Plaintiff's request for light duty in light of his epilepsy diagnosis and the recommendation from his specialist. Id.  Hood did not respond. Id.  Plaintiff's union president told him on December 12, 2019 that Lenhart had told the union president that "they were trying to get Plaintiff back to work, but he would need to cut ties with his Union attorney." Id. at ¶ 38.

Plaintiff's union counsel sent Sheriff Hood a letter on January 10, 2020 that informed Hood that "Defendants' disparate treatment of Plaintiff could constitute violations of the A[mericans] with [D]isabilities A[ct] and [the] N[ew] Y[ork] S[tate] H[uman] R[ights] L[aw]." Id. at ¶ 39.  Plaintiff received a letter from the Madison County Attorney in response. Id.  The letter informed Plaintiff that the County was "willing to engage in the interactive process to help him return to work." Id.

On February 19, 2020, Plaintiff's doctor cleared him to return to work without restriction on March 15, 2020. Id. at ¶ 40.  Plaintiff provided that information to the Defendants, who disregarded it. Id.  Indeed, on March 4, 2020, Defendants informed Plaintiff that he had not been cleared to return to work. Id.  Defendants informed Plaintiff on March 5, 2020 that he would not be allowed to return to work until Defendants reviewed his medical documentation. Id. at ¶ 41.  Defendants also informed Plaintiff that he would be

4

required to sign and return a medical release form.  Id.  When Plaintiff asked why he needed to sign such a form when he had a doctor's release, "he was told that he was 'pushing the insubordinate button right now.'"  Id.  Plaintiff alleges that "Defendants were making it exceedingly difficult for Plaintiff to return to work, despite his clearance, due to their discriminatory animus."  Id.

Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") on March 16, 2020.  Id. at ¶ 42.  Plaintiff attempted to file a grievance on March 17, 2020.  Id. at ¶ 43.  Sheriff Hood informed him that he would not accept the grievance forms.  Id.  Hood said that "Plaintiff had 'drawn the line in the sand'" when he used an attorney, and told him to take his grievance to the County attorney.  Id.  Later on March 17, "the grievance was put in abeyance at stage 2 of the procedure."[1]  Plaintiff returned to the payroll as a non-essential employee on March 23, 2020.  Id. at ¶ 44.  "[H]e was still not permitted to return to work."  Id.  Plaintiff further alleges that on May 7, 2020, this "abeyance was rescinded" and advanced to stage 3.[2]  On May 29, 2020, Plaintiff learned that his Stage 3 grievance "had been denied, and that it was proceeding to stage 4."  On June 1, 2020, Defendants informed Plaintiff that he was cleared to return to work on June 2, 2020.  Id. at ¶ 51.  On June 2, 2020 Plaintiff "was informed that his return to work constituted a settlement of his grievance."  Id. at ¶ 52.

---

[1]The Complaint does not explain what it means to put a grievance into abeyance or what stage 2 is.

[2]Plaintiff's use of the passive voice here and at other points in the Complaint makes it difficult to identify the parties who made the decisions Plaintiff complains about.

Plaintiff submitted an amended complaint to the NYSDHR on March 30, 2020.  Id. at

¶ 45.  Plaintiff alleges that "the retaliation and discrimination increased" after he filed that

complaint.  Id.  Plaintiff returned to work as a Deputy Sheriff on June 2, 2020.  Id. at ¶ 53.

On June 9, 2020 Plaintiff sent a memorandum requesting a schedule change to Hood.  Id.

at ¶ 54.  Plaintiff's request came "pursuant to the suggestion of the County doctor."  Id.  On

July 3, 2020, Plaintiff came to work to discover that "a giant version of a photo of Sheriff

Hood had been placed on the wall in the hallway directly across from his desk[.]" Id. at ¶ 55.

Plaintiff alleges that the photo appeared "in an attempt to intimidate and harass him further."

Id.  Plaintiff "had previously told a coworker that he found the photos of Sheriff Hood in the

office to be intimidating."  Id.  On July 4, 2020, "Plaintiff was told that he could not park in

the parking spot closest to the door because it was not his assigned parking spot."  Id. at ¶

56.  July 4 was a holiday and no one else was working.  Id.  Plaintiff "was assigned" around

thirteen cases in July 2020, "a disproportionate number of cases more than his coworkers."

Id. at ¶ 57.

On July 26, 2020, Plaintiff withdrew his NYSDHR complaint "out of fear of further

retaliation."  Id. at ¶ 58.  Plaintiff believed that he had to withdraw his complaint "to maintain

his job."  Id.  Still, Plaintiff alleges, "the discrimination and retaliation continued."  Id. at ¶ 59.

Plaintiff alleges that on November 6, 2020, Plaintiff went to a Lieutenant for instructions on

how to complete paperwork on behalf of a sergeant who was not working.  Id.  Plaintiff

claims that on November 19, 2020, he "was scolded for not following the chain-of-

command, which was used against him on his performance evaluation."  Id.  Later, "[t]he

Lieutenant falsely claimed that she did not provide Plaintiff with any instructions."  Id.

Sheriff Hood also denied Plaintiff's November 24, 2020 request to teach snowmobile safety

6

classes.  Id. at ¶ 60.  Plaintiff wanted to "maintain his instructor certification."  Id.  Plaintiff

claims that "other similarly situated coworkers were permitted to maintain their instructor

certifications."  Id.  Plaintiff received a poor evaluation review on December 1, 2020.  Id. at ¶

61.  He received several ratings of "[d]oes not meet expectations."  Id.  Some unidentified

person told Plaintiff that he would receive a "write up" for violating social media policy.  Id. at

¶ 62.  Plaintiff had made a comment on his personal Facebook page.  Id.  Plaintiff alleges

that "other similarly situated coworkers had never been written up or disciplined for their

social media comments and posts."  Id.  Sergeant Matt White directed Plaintiff on January

202, 2021 that all of his reports must be reviewed by Sgt. White.  Id. at ¶ 63.  No other

officer faced similar rules.  Id.  Plaintiff also had "to send Sgt. White an email with the date

and time he leaves any case[.]"  Id.  Three of Plaintiff's coworkers met to discuss a team that

Plaintiff was part of on February 3, 2021.  Id. at ¶ 64.  Plaintiff "was not notified of or invited

to the meeting."  Id.  The meeting concerned developing interview questions for new

candidates, but Plaintiff "was not invited to be part of the interviews."  Id.  Plaintiff had more

seniority than these coworkers.  Id.

Sergeant White issued Plaintiff formal written counseling about Plaintiff's alleged

violation of social media policy on February 15, 2021.  Id. at ¶ 65.  Plaintiff alleges that

Defendants sought to terminate Plaintiff "and were inventing performance issues and

disciplinary issues to create a false sense of 'legitimacy.'"  Id. at ¶ 66.  On February 21,

2021, Plaintiff learned that all employees had been reassigned to work schedules Monday

through Friday from 8 a.m. to 4 p.m.  Id. at ¶ 67.  Plaintiff advised Sergeant White that "it

would not work with his schedule[.]"  Id.  Some unspecified person "later told" Plaintiff "that

management did not want Plaintiff working weekends anymore, for various and capricious

reasons." Id.

On September 28, 2021, Plaintiff drove his work vehicle to the home of his estranged wife, where the two had "an exchange." Id. at ¶ 68.  Plaintiff's wife contacted the police.  Id. Some unidentified person or agency transported Plaintiff to a Comprehensive Psychiatric Emergency Program at St. Joseph's Hospital in Syracuse, New York.  Id. at ¶ 69.  Plaintiff went voluntarily to the hospital for evaluation.  Id.  Plaintiff was diagnosed with adjustment disorder with depressed mood at the hospital.  Id. at ¶ 70.  He was released the same day. Id.  Plaintiff "was not considered a threat to himself or anyone else."  Id.  Plaintiff has since "sought and received psychiatric treatment."  Id. at ¶ 71.

Plaintiff received a letter from Undersheriff Wilcox on September 29, 2021 that notified Plaintiff he would be placed on administrative leave pending an investigation of the incident.  Id. at ¶ 72.  Plaintiff received a call from Sheriff Hood on January 31, 2022 at 12:49 p.m. that directed Plaintiff to appear for a meeting at 3 p.m.  Id. at ¶ 73.  Hood told Plaintiff he would not wait for Plaintiff's union attorney to arrive.  Id.  At that meeting, attended by Plaintiff, Hood, Ryan Aylward, and Matt Schwock,[3] Plaintiff received a notice of termination.  Id. at ¶ 73.  He did not receive a hearing or other process before this notice. Id.

The notice charged Plaintiff with "five specifications" of Misconduct/Incompetence. Id. at ¶ 74.  Plaintiff alleges that "[t]he reasons stated were false and retaliatory."  Id.  The notice further stated that "an employee has twenty working days to submit a grievance of a disciplinary action before the penalty is deemed accepted.  Id. at ¶ 75.  The notice also

[3]The Complaint does not describe who Aylward and Schwock are.

provided that an employee has a right to representation from a union attorney and a right to request arbitration at Stage 4 of the process.  Id.  Despite these stated protections, "Plaintiff was terminated effective immediately.  Id.  Plaintiff filed a grievance on February 7, 2022, within twenty days of the notice.  Id. at ¶ 76.  That grievance is still pending.  Id.  Plaintiff has been terminated, meaning that his termination was "final long before the grievance was resolved."  Id.  Plaintiff's termination led to the permanent invalidation of his police officer certification, even though his grievance was still pending.  Id. at ¶ 78.

Plaintiff's Complaint contains four counts.  Count One claims discrimination on the basis of Plaintiff's disabilities in violation of the ADA.  Count Two claims retaliation for opposing an act made unlawful under the ADA.  Count Three and Count Four raise the same discrimination and retaliation claims under New York law.

After service of the Complaint, Defendants filed the instant motion.  The parties then briefed the issues, bringing the case to its present posture.

## II.   LEGAL STANDARDS

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  A defendant moving for dismissal pursuant to Rule 12(b)(6) argues that the plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the complaint were proved true.  In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor."  Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009).  This tenet does not apply to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  "To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

**III.    Analysis**

Defendants seek dismissal on a number of grounds, which the Court will address in turn.

### A.    Madison County Sheriff's Office

Plaintiff alleges that "Defendant Madison County Sheriff's Office ("MCSO") is a municipal department of Madison County, a municipal corporation."  Complt. at ¶ 19. "Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued."  Hall v. City of White Plains, 185 F.Supp.2d 293, 303 (S.D.N.Y. 2002).  As such, "where both the municipality and the municipal department have been named as defendants, courts routinely have dismissed the claims against the department."  Dayton v. City of Middleton, 786 F.Supp.2d 809, 818 (S.D.N.Y. 2011).  Plaintiff's position that New York law makes the County and the County Sheriff's Department his joint employers is immaterial to this question.  The issue here is whether suing both the County and the County Sheriff's department is redundant.  The Court finds that it is, and will grant the motion to dismiss with prejudice with respect to the Madison County Sheriff's Department.

### B.    Time-Barred Claims

Defendants next argue that the Court should dismiss any of Plaintiff's claims related to any discriminatory act that occurred before October 26, 2019 because such claims fall outside the three-year statute of limitations that apply to the ADA.  Defendants argue that:

Here, Plaintiff alleged facts pertaining to a seizure that he sustained while at work on or about September 30, 2019. *See* dkt. #1 at ¶ 27. He added allegations pertaining to medical treatment, including his doctor's recommendation that he could return to work but could not drive a County vehicle or carry a firearm. *See id.* at ¶¶ 28-31. Thereafter, he claimed that he [was] required to turn in his firearm, was prohibited from driving any vehicle (including his own), was placed on two weeks paid leave (and remain[ed] out on leave using accrued time), that an offer of 'light' duty work was rescinded, that he was denied a reasonable accommodation of driving his own vehicle, that Sheriff Hood told him he was sick of dealing with him, that other employees were terrified of working with him, and that they were the ones having to deal with Plaintiff. *See id.* at ¶ 32. All of these alleged acts occurred between September 30, 2019 [and] October 9, 2019, which is more than three years prior to commencement of the action, and therefore should be time-barred.

Defendants' Brief, dkt. # 10-1, at 10. Plaintiff responds that the Complaint alleges facts that constitute a continuing violation, and that allegations of an ongoing discriminatory practice that continues into the period covered by the statute of limitations permits consideration of discriminatory acts that occur before the actual limitations period.

The Second Circuit Court of Appeals has concluded that the ADA contains a three-year statute of limitations. Purcell v. New York Inst. of Tech., 931 F.3d 59, 63 (2d Cir. 2019) ("We have previously endorsed a three-year statute of limitations for New York-based ADA claims by summary order, and explicitly do so now in this published order."). A claim under the ADA accrues "when [the plaintiff] knew or had reason to know of the injury serving as the basis for his claim." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir. 1999). At the same time, "'under the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that [discrimination] took place within the statutory time period.'" Purcell, 931 F.3d at 65 (quoting Papelino v. Albany Coll. of Pharmacy of Union Univ., 633 F.3d 81, 91 (2d Cir. 2011)). As such, "'a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances

11

of discrimination are permitted by the [defendant] to continue unremedied for so long as to

amount to a discriminatory policy or practice.'" Id. (quoting Cornwell v. Robinson, 23 F.3d

694, 704 (2d Cir. 1994)).

Plaintiff argues that his complaint alleges facts sufficient to find a continuing violation.

He contends:

> Mr. Paul alleged continuing violations of the ADA in his NYSDHR complaint,
> amended complaint, internal grievance, EEOC Charge, and in the federal complaint.
> Mr. Paul filed a complaint with the NYSDHR on March 16, 2020, amended on March
> 30, 2020, after Defendants continued to engage in discriminatory conduct for their
> repeated failures to provide workplace accommodations, mandating administrative
> leave and forcing Mr. Paul to exhaust leave, and continuously refusing to return Mr.
> Paul to work after several medical clearances without any limitations. Mr. Paul
> reported Defendants' discriminatory conduct in a March 17, 2022, internal grievance.
> He alleged a series of specific, discriminatory acts that resulted in his July 20, 2022,
> EEOC Charge. Each time Mr. Paul reported these violations they involved the same
> actors and the same types of discrimination that progressively worsened resulting in
> his termination.
>
> Accepting the facts as true for the purposes of a motion to dismiss, Defendants
> began discriminating against Mr. Paul by failing to accommodate his disability
> (epilepsy) as of at least September 30, 2019, and continued to discriminate against
> him by repeatedly not accommodating his disabilities, inclusive of his later diagnosed
> mental disability, until the time Defendants unlawfully terminated his employment on
> January 31, 2022. Because Mr. Paul alleged sufficient facts to support a continuing
> violation in his EEOC Charge and at least one act of discrimination occurred within
> the statutorily permitted time period, the claims are timely.

Plaintiff's Brief, dkt. # 26, at 11.

"[T]he continuing violation doctrine can be applied when the plaintiff's claim seeks

redress from injuries resulting from 'a series of separate acts that collectively constitute one

'unlawful [act]', but the doctrine cannot be applied when the plaintiff challenges conduct that

is a discrete unlawful act." Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009)

(quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002)).   The doctrine

does not apply "even where . . . discrete acts are part of a 'serial violation,' but to claims that

by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." Gonzalez v. Hasty, 802 F.3d 212, 220 (2d Cir. 2015) (quoting Morgan, 536 U.S. at 114-15). Thus, "where the continuing violation doctrine applies, the limitations period begins to run when the defendant has 'engaged in enough activity to make out an actionable . . . claim.'" Id. (quoting Morgan, 536 U.S. at 117). Still, "'the continuing violation doctrine is disfavored in this circuit and will be applied only upon a showing of compelling circumstances.'" Ford v. N.Y. City Bd. of Educ., No. 19 Civ. 6327, 2022 U.S. Dist. LEXIS 65733, at *20 (S.D.N.Y. April 8, 2022) (quoting Bloom v. New York City Bd. of Educ. Teachers' Ret. Sys. of the City of New York, No. 00 Civ. 2728 (HBP), 2003 U.S. Dist. LEXIS 5290, at *8 (S.D.N.Y. Apr. 2, 2003)).

The Court finds that the Complaint's allegations, outlined above, indicate only a number of discrete events, and not the sort of a series of actions that culminated in an actionable claim. First, the events that Plaintiff describes that occurred in 2020 are immaterial to this argument, since Defendants acknowledge that events in 2020 and 2022 occurred within the statute of limitations. Second, Plaintiff argues that he has alleged continuing violations by pointing to Defendants' failure to accommodate his disability despite repeated requests. Second Circuit law forecloses failure to accommodate as a basis on which to find a continuing violation. See Elmenayer v. ABF Freight Sys., 318 F.3d 130, 134-135 (2d Cir. 2003) ("an employer's rejection of an employee's proposed accommodation for religious practices does not give rise to a continuing violation. Rather, the rejection is the sort of 'discrete act' that must be the subject of a complaint" within the proper time frame). The Court will therefore grant the motion in this respect.

At the same time, the Court reads the Complaint to imply that a series of events

13

occurred beginning from Plaintiff's epilepsy diagnosis that could possibly fit into a pattern of conduct that finally culminated in actionable conduct within the limitations period.  As such, the Court will grant the motion without prejudice to Plaintiff offering allegations which could plausibly support applying the continuing violations doctrine to the statute of limitations in this matter.

### C.    ADA Discrimination Claim

Defendants next contend that the Court should dismiss Plaintiff's ADA discrimination claim.  Defendants contend that Plaintiff has not pled facts sufficient to establish that he could perform the essential functions of his job and has alleged that he suffered an adverse employment action because of his disability or his employer's perception that he had a disability.

To "establish a prima facie case of discrimination under the ADA, a plaintiff must show (a) that his employer is subject to the ADA; (b) that he is disabled within the meaning of the ADA or perceived to be so by his employer; (c) that he was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (d) that he suffered an adverse employment action because of his disability." Brady v. Wal-Mart Stores, 531 F.3d 127, 134 (2d Cir. 2008).  Courts interpreting claims of employment discrimination under the ADA follow the burden-shifting framework set out by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 52 (2d Cir. 1998).  Under this framework, the "plaintiff must initially come forward with facts sufficient to establish a *prima facie* case that his discharge was effected under circumstances giving rise to an inference of discrimination." Id.  Once

plaintiff meets his burden, "the burden of production then shifts to the defendant, who must proffer a legitimate, non-discriminatory reason for its actions in order to rebut the presumption of unlawful discrimination" created when plaintiff makes out a prima facie case. Id. If the employer makes out this burden to "articulate an explanation that, if true, would connote lawful behavior," the burden then returns to "the plaintiff to persuade the factfinder that the employer's proffered explanation is merely a pretext for unlawful discrimination." Id. At the pleading stage, "'a plaintiff is not required to plead a *prima facie* case under McDonnell Douglas . . . to defeat a motion to dismiss' and with respect to the 'inference of discriminatory intent' requirement, 'a plaintiff need only give plausible support to a minimal inference of discriminatory motivation.'" Dooley v. Jetblue Airways Corp., 636 Fed. Appx. 16, 21 (2d Cir. 2015) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015)).

Plaintiff's claim here involves an allegation that Defendant failed to accommodate his disability. Under those circumstances, Plaintiff's prima facie case "requires a showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer refused to make such accommodations." Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004).

Defendants concede that Plaintiff has plausibly alleged the first two elements of his *prima facie* case, but contend that he has failed to plead sufficient facts to show he was qualified to perform the essential functions of the job or demonstrate that he suffered an adverse employment action because of his disability. Defendants first contend that portions

of the Complaint contain admissions that Plaintiff could not perform essential functions of

the job.  Plaintiff admits, Defendants point out, that his doctor restricted him from carrying a

firearm or driving a car after his seizure, and that he did not receive clearance to return to

work without restrictions until March 15, 2020.  Moreover, Defendants claim, nothing in the

Complaint explains the essential functions of the job and whether Plaintiff could perform

them with or without accommodations.  Plaintiff responds by citing to allegations in the

Complaint that indicate that he was cleared to return to work without restrictions at a certain

point, but does not point to allegations that indicate the nature of his job or how his disability

affected his ability to perform the elements of that job.

Under the ADA, "a 'qualified individual' is an individual who, with or without

reasonable accommodation, can perform the essential functions of the employment position

that such individual holds or desires.'" Williams v. MTA Bus Co., 44 F.4th 115, 132 (2d Cir.

2022) (quoting 42 U.S.C. § 12111(8)).  "[T]he term 'essential functions' [is] equivalent to 'the

fundamental duties of the employment position,' as the EEOC has defined the term in its

regulations."  Id. (quoting McBride v. BIC Consumer Prods. Mfg. Co., 583 F.3d 92, 98 (2d

Cir. 2009)).  Courts must include the employers judgment about what the essential functions

of the job are in making this judgment, and must offer "'substantial deference'" to these

opinions.  Id. at 133 (quoting McBride, 583 F.3d at 98).  The plaintiff must also show that he

has "'the requisite skill, experience, education and other job-related requirements of the

employment position.'" Id. (quoting McBride, 583 F.3d at 98, in turn quoting 29 C.F.R. §

1630.2(m)).  "The plaintiff bears the burden of demonstrating that 'the identified position [is]

one for which [he] was qualified.'" Id. (quoting McBride, 583 F.3d at 96-98).  Courts may

dismiss a complaint if the plaintiff fails to allege the "essential functions" of a position "or

that he was able to perform those functions."  <u>Brown v. UPS UPS</u>, No. 22-cv-762, 2022 U.S. Dist. LEXIS 159872, at *6 (N.D.N.Y. Sept. 6, 2022).

The Court finds that Plaintiff has not alleged facts sufficient to make plausible that Plaintiff was a qualified individual within the meaning of the ADA.  The Court has examined the Complaint carefully, and Plaintiff fails to allege what the functions of his Deputy Sheriff position, much less the essential functions of that position.  He has failed to allege how he could perform those functions, either with or without accommodations, given his disability.  Plaintiff does not allege how the disabilities from which he suffered limited his daily activity or altered the life he lived before he suffered the disabilities.  Without such information, Plaintiff cannot make out an ADA claim, even if he has plausibly alleged adverse employment action.  The Court will therefore grant the motion in this respect as well.  Because, however, the Plaintiff could conceivably plead the essential functions of his position with sufficient detail to state a plausible claim in this respect, the Court will permit Plaintiff to file an Amended Complaint.[4]  The dismissal shall be without prejudice in this respect.

## C.    Retaliation Claim

Plaintiff also brings a retaliation claim under the ADA.  To state a retaliation claim,

---

[4]Defendants also argue that Plaintiff has failed to plead why his termination was connected to his disability and has thus failed to state a claim in that respect as well.  The Court agrees, but also finds that Plaintiff could conceivably plead additional facts to make plausible that his firing was a result of his disability. If Plaintiff chooses to amend his Complaint, Plaintiff should plead facts sufficient to demonstrate that the adverse employment actions he experienced because of his disability.  Similarly, Plaintiff should plead facts sufficient to define the accommodations he sought for his disability and the Defendants' response to those requests if he hopes to maintain a failure-to-accommodate claim.

17

Plaintiff must plausibly allege "that he engaged in a protected activity, that he suffered an adverse employment action, and that a causal connection exists between the protected activity and the adverse employment action." Fox v. Costco Wholesale Corp., 918 F.3d 65, 72-73 (2d Cir. 1999). Seeking a reasonable accommodation constitutes protected activity under the ADA. Ibela v. Allied Universal, 2022 U.S. App. LEXIS 12155 (2d Cir. May 5, 2022) (citing Weixel v. Bd. of Educ. of N.Y., 287 F.3d 138, 149 (2d Cir. 2002)). "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment.'" Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000) (quoting Richardson v. New York State Dep't of Correctional Serv., 180 F.3d 426, 446 (2d Cir. 1999)). To meet this standard, "a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Id. (quoting Crady v. Liberty Nat'l Bank and Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)). "'A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other incidents . . . unique to a particular situation.'" Id. (quoting Crady, 993 F.2d at 136)).

Defendants seek dismissal, arguing that Plaintiff has failed to plausibly allege a causal connection between the alleged adverse employment action and the protected activity.

The Complaint alleges that:

94.    Plaintiff opposed unlawful practices under the ADA when on or about October 28, 2019, and on or about January 10, 2020, Plaintiff, by and through counsel, raised claims of disability discrimination to Defendants and on or about March 16, 2020, filed a complaint of discrimination with the NYSDHR.

18

Complt. at ¶ 94.  After these complaints about discrimination, Plaintiff alleges that:

> 95.    Defendants unlawfully retaliated against Plaintiff by refusing to allow Plaintiff
> to return to work for eight months, harassing and intimidating him upon his
> return to work in June 2020, assigning him a disproportionately high number of
> cases, denying his request to maintain his instructor certification, issuing him a
> written counseling memo for alleged violation of the social media policy, and
> terminating him without due process when his mental disability is diagnosed.

Id. at ¶ 95.  Plaintiff alleges a causal connection between his protected activity and adverse

employment actions because "Defendants' actions all occurred soon after Plaintiff engaged

in protected ADA activity."  Id. at ¶ 98.

Defendants contend that Plaintiff has failed to allege a plausible causal connection

between his protected activity and the adverse employment actions he claims occurred.

First, Defendants point out that the adverse employment action of being placed on

administrative leave occurred on October 9, 2019, before Plaintiff sent the County letters on

October 28, 2019 and January 10, 2020, and before he filed his NYSDHR complaint on

October 9, 2019.  While Defendants admit that the County did not reinstate Plaintiff until

June 2, 2020, they point out that the Complaint alleges that Plaintiff's doctor prohibited him

from driving or using a firearm until March 15, 2020, and that Plaintiff did not submit medical

information for the County's review until April 2, 2020.  As such "[t]he complaint does not

indicate there was any undue delay by the County in reinstating Plaintiff on June 2, 2020,

nor is there any indication whatsoever that it was done as a result of Plaintiff's filing of a

NYSDHR complaint or filing two letters raising discrimination claims."  Defendants also

contend that the hanging of a portrait of the Sheriff does not constitute retaliation, and they

argue that Plaintiff's assignment of cases does not support a retaliation claim because

Plaintiff does not allege how many cases other deputies had.  Plaintiff also fails, Defendants

claim, to allege why his inability to teach a snowmobile course connects to his complaints of discrimination. Plaintiff's claims regarding his write-up for allegedly violating the social media policy also fail to explain the context of the write-up in sufficient detail for the court to analyze whether the write-up was retaliatory. Finally, Defendants argue that Plaintiff's complaint provides evidence for why his firing was justified in light of Plaintiff's conflict with his estranged wife. Plaintiff's pleading, Defendants contend, undermines any claim that his termination was retaliatory.

The Court finds that Plaintiff has failed to state a case that he suffered an adverse employment action casually connected to his reports of disability discrimination. As explained, an adverse employment action occurs when a plaintiff suffers a 'materially adverse change' in the terms and conditions of employment.'" Galabya, 202 F.3d at 640. To meet this standard, "a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Id. The facts recited above largely constitute complaints about the conditions of employment that amounted to mere disruptions and inconveniences, such as the presence of a picture of the Sheriff that seemed intimidating or the loss of an opportunity to instruct particular classes. The one event that clearly represents an adverse employment action–Plaintiff's firing–occurred years after he complained about his treatment. The Court cannot find a causal connection between the complaints of mistreatment alleged and the termination. Even assuming that the complaints that Plaintiff had about changes in his working conditions all constitute adverse employment actions, Plaintiff has failed to plead facts sufficient to make plausible that those actions were plausibly connected to his protected activity.

The Court will therefore grant the motion in this respect as well. The Court will grant

the motion without prejudice to repleading.  The Court reads the Complaint to allege that

Defendants engaged in a years-long campaign against him because of his disabilities, and

that the campaign intensified once he complained about that treatment.  While the Court

finds that the facts alleged in the Complaint are insufficient to make plausible a causal

connection between Plaintiff's protected activity and any adverse job actions he may have

experienced, the Court finds that better pleading may show such a connection.

### D.   State-Law Claims

The Defendants urge the Court to decline to exercise supplemental jurisdiction over

Plaintiff's state-law claims if the Court decides to grant the motion to dismiss.  As the Court

will allow the Plaintiff to re-plead the ADA claims, the Court will not at this time decline to

exercise supplemental jurisdiction.  Moreover, for reasons that will become clear,

addressing the justiciability of the state-law claims will serve judicial efficiency.

### I.   Election of Remedies

Defendants argue that the Court should dismiss Plaintiff's claims brought under New

York law because Plaintiff filed a NYSDHR complaint, and New York law precludes a party

who elects that remedy from bringing suit in a court of law.  The Second Circuit Court of

Appeals has explained that, under the NYHRL:

> Any person claiming to be aggrieved by an unlawful discriminatory practice
> shall have a cause of action in any court of appropriate jurisdiction for
> damages . . . and other such remedies as may be appropriate . . . unless such
> person had filed a complaint thereunder or with any local commission on
> human rights.
>
> Thus, by the terms of the statute . . . the NYHRL . . . claims, once brought
> before the NYSDHR, may not be brought again as a plenary action in another
> court.

York v. Ass'n of the Bar, 286 F.3d 122, 127 (2d Cir. 2002) (quoting N.Y. Exec. Law §
297(9)).  "Once a complainant elects the administrative forum by filing a complaint with the
Division, a subsequent judicial action on the same complaint is generally barred."  Legg v.
Eastman Kodak Co., 248 A.D.2d 936, 937 (4th Dept. 1998).  Those election of remedies
provisions apply in federal as well as state court.  York, 286 F.3d at 127.   Under this
provision, "a plaintiff whose complaint before the state agency is dismissed for
administrative convenience may seek a court remedy."  Promisel v. First Am. Artificial
Flowers, 943 F.2d 251, 257 (2d Cir. 1991); see N.Y. Exec. Law § 297(9) ("At any time prior
to a hearing before a hearing examiner, a person who has a complaint pending at the
division may request that the division dismiss the complaint and annul his or her election of
remedies so that the human rights law claim may be pursued in court, and the division may,
upon request, dismiss the complaint on the grounds that such person's election of remedies
is annulled.").  Dismissal on that basis means that "the 'election of remedies' barrier" is
"removed" for state and federal court action.  Id.

Plaintiff contends that he can avoid this election-of-remedies barrier to suit because
he withdrew his complaint before the Human Rights Commission.  He provides
documentation showing that he withdrew his complaint.  See Exh. E to Plaintiff's Response
to Defendants' Motion, dkt. # 26-5.  Plaintiff provides a "closing document" from the Division
of Human Rights dated August 20, 2020.  Id.  The document shows that Plaintiff filed his
complaint on March 16, 2020, alleging a violation on March 7, 2020.  Id.  The violation
named Madison County, the Madison County Sheriff's Office, Todd Hood, and Robert
Lenhart.  Id.  The Division of Human Rights offered a determination: "Dismissal; Withdrawn
without Benefits."  Id.  Plaintiff includes a letter to him from Interim Commissioner of the

Division of Human Rights Jonathan J. Smith dated July 17, 2020.  Id.  That letter indicated that Plaintiff had informed the Division that he wished to withdraw his complaint and directed Plaintiff to sign and return a form indicating that he intended to withdraw his complaint.  Id.  Plaintiff signed the form on the same day, stating as his reason for withdrawing his complaint that "I do not wish to pursue my complaint at this time."  Id.  The Division issued an Order of Withdrawal on July 28, 2020.  Id.  The order stated that Plaintiff "notified the Division of the withdrawal of this complaint in a written communication dated July 17, 2020.  Id.  As such the Division found that "the complaint is ordered withdrawn and the file is closed."  Id.  A memorandum to file from the Binghamton Regional Director dated July 27, 2020 recommended that, due to Plaintiff's withdrawal of the case, "the file should be closed as a Withdrawal Without Benefits."  Id.

Plaintiff contends that this determination should entitle him to avoid the election of remedies provision in the human rights law.  He cites to the provision in the Human Rights Law that permits a person who files a complaint with the Division to file a court action when that person's case is closed for "administrative convenience."  Here, however, Plaintiff's case was not closed due to administrative convenience, but on another basis.  The Court cannot find that such a provision applies, and will grant the motion on this basis.  To the extent that Plaintiff seeks to litigate his case under the NYSHRL, the Court lacks jurisdiction to hear his claims related to the case he filed before the NYSDHR and withdrew in July, 2020.

## V.   CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss, dkt. # 10, is

23

hereby **GRANTED**.  As explained above, the motion is granted without prejudice to repleading with respect to Plaintiff's ADA discrimination and retaliation claims against the County of Madison and granted with prejudice in all other respects.  Plaintiff shall file an amended complaint within 21 days of the date of this order.  Failure to file an amended complaint within the time specified by the Court will cause the Court to close the matter without further order.

**IT IS SO ORDERED.**

Dated: September 27, 2023

Thomas J. McAvoy
Senior, U.S. District Judge

24